UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CR. NO. H-06-237-S |
| | § | |
| EUGENE H. WILLIAMS JR. | § | |
| Defendant | § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR DISCOVERY; INSPECTION; AND PRE-TRIAL DISCLOSURE

### V.

This paragraph is based on Rule 12(d)(2) of the Federal Rules of Criminal Procedure, which states:

> "At the arraignment or as soon thereafter as is practicable, the Defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this Rule, request notice of the government's intention to use (in its evidence-in-chief at trial) any evidence which the Defendant may be entitled to discover under Rule 16, subject to any relevant limitations prescribed in Rule 16."

The Defendant would submit that, at this time, he does not have sufficient information concerning the government's case against him in order to determine whether it is necessary to file a motion to suppress any evidence. For that reason, he would request that this Motion be granted.

### VI.

Paragraph VI. requests that the Court require the prosecutor to reveal to defense counsel any and all records and or reports relating facts or data which underlie "expert" opinions which the Government intends to elicit from witnesses at trial.

12

SC

The "underlying facts or data" which support the witnesses' "expert opinion" are at the very least discoverable upon cross-examination. See Rule 705 of the Federal Rules of Evidence.

> Rule 705. Disclosure of Facts or Data Underlying Expert Opinion.
>
> (a) Disclosure of facts or data. The expert may testify in terms of opinion or inference and give reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination.

Accordingly, a citizen accused of crime should have equal access to the "underlying facts and data" upon which a witness giving an "expert" opinion bases same. The due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution requires no less. See Brady v. Maryland, 373 U.S. 83 (1963); Wardius v. Oregon, 412 U.S. 470 (1973).

If the Government insists upon offering such expert opinion testimony, this accused has a more compelling Sixth Amendment right to explore and test the basis for same on cross-examination. See Davis v. Alaska, 415 U.S. 308 (1974) [prohibition against cross-examination of prosecution witness regarding his probation for juvenile offense denial of confrontation on facts].

Furthermore, the "statements" of others which are relied upon by experts in gaining the "training" and "experience" upon which they base their testimony, have been "adopted" or "approved" that other person's statements for purposes of bringing such statements within the mandatory disclosure requirements of Rule 26.2 of the Federal Rules of Criminal Procedure.

> Rule 26.2
>
> Definition. As used in this rule, a "statement" of a witness means:
>
> (1) a written statement made by a witness that is signed or otherwise adopted or approved by the witness . . .

Production of these materials pre-trial will obviate delays during trial to allow counsel to review them and conduct out of court investigation and preparation related to them. Federal Rule of Criminal Procedure 26.2(d) provides for a recess in proceedings for just this purpose. Providing counsel with the materials before trial is therefore in the interest of judicial economy. This Court should order their production pursuant to its supervisory powers.

IX.

18 U.S.C. §3500 provides that in a federal criminal prosecution, after a witness called by the prosecution has testified on direct examination, the Court, on motion of the Defendant, should order the prosecuting attorneys to produce any "statement," as defined in the act, in the possession of the government, which relates to the subject matter as to which the witness had testified. The statute provides that the definition of "statement" is as follows:

> 1) "a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> 2) a stenographic, mechanical, electrical, or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> 3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

The specific language of the statute requires production of any "statement" in the possession of the United States, without any limitation to statements made to any agent of the government. Thus, statements made to other persons not connected with the government, but in the possession of the prosecuting attorney, would be covered. Further, all statements made to the prosecuting attorney and adopted by said witness are also discoverable. See Goldberg v. United States, 426 U.S. 94, 96 S. Ct. 1338; L.Ed. Ld 603 (1976). Pursuant to the Jencks Act and the case Jencks v. United States, 353 U.S. 657, 77 S. Ct. 1007,1 L.Ed. 2d 1103 (1957), a defendant on trial in a criminal prosecution

is entitled to relevant and competent reports and statements in the possession of the government, touching the events and activities as to which a government witness has testified at trial.

XIV.

By this motion, defendant specifically requests disclosure and production of all evidence of any kind that may arguably be favorable to the accused. This motion expressly encompasses any impeachment evidence, including evidence that goes to the credibility of Government witnesses. Giles v. Maryland, 386 U.S. 66 (1967); See also Giglio v. United States, 405 U.S. 150 (1972) (promises of leniency); United State v. Starusko, 729 F.2d 256 (3rd Cir. 1984)(inconsistent summaries of statements of Government witnesses); United States v. Auten, 632 F.2d 478 (5th Cir. 1980) (criminal record); Martinez v. Wainwright, 621 F.2d 1984 (5th Cir.1980)(rap sheet); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980) (conflicting testimony); United States v. Gaston, 608 F.2d 607 (5th Cir. 1979)(Brady requires disclosure of evidence important and useful for impeachment purposes).

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 104 (1963). Brady places the obligation to come forward with such evidence on the Government in the first instance. Giglio v. United States, 405 U.S. 150, 154 (1972); Maryland v. Wainwright, 621 F.2d 104, (5th Cir. 1980). Performance of this obligation is required by the Fifth Amendment's guarantee of due process. Brady v. Maryland, supra. Moreover, it is well established that the Government is charged with knowledge of the significance of evidence and its actual or constructive possession "even if [it]

has actually overlooked it." United States v. Agurs, 427 U.S. 97, 110 (1976); United States v. Auten, 632 F.2d 478 (5th Cir. 1980) (under Brady the Government had knowledge of criminal records of its key witness even though prosecutor chose not to run a check on witness to obtain such information because of shortness of time); Martinez v. Wainwright, 621 F.2d 184 (5th Cir. 1980) (Brady rule applied even though prosecutor personally unaware of the evidence that had been requested where it was available in medical examiner's office); United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973)(Brady does not permit Government to compartmentalize Department of Justice and deny Defendant's access to files obtainable from other agency closely connected to the case). And it has been held that:

> [T]he deception which results from negligent nondisclosure is no less damaging than that which is a product of guile, and such negligent nondisclosure entitles a defendant to relief.

Martinez v. Wainwright, 621 F.2d 184, 187-188 (5th Cir. 1980), citing Shuler v. Wainwright, 341 F. Supp. 1061, 1069 (N.D. Fla. 1972) remanded on other grounds 491 F.2d 1213 (5th Cir. 1974).

In doubtful cases, the better practice is to grant the discovery sought, thereby avoiding constitutional questions arising under Brady. United States v. Agurs, 427 U.S. 97 (1976); United States v. Allen, 513 F. Supp. 547, 550-551 (W.D. Okl. 1981); see also ABA Standards for Criminal Justice 2nd Ed 1980, pp. 11-28. These rulings are entirely consistent with the Supreme Court's statement in Dennis v. United States, 384 U.S. 855, 870 (1966), that "disclosure rather than suppression of relevant materials ordinarily promotes the proper administration of criminal justice." See also United States v. Countryside Farms, Inc., 428 F. Supp. 1150, 1154 (D. Utah 1977)(the only course to be followed by a prudent prosecutor is to supply evidence that is even arguably favorable to Defendant; it is no excuse that it may be burdensome, and it is unimportant if the

failure to disclose is in good faith). Indeed the Supreme Court specifically found in United States v. Agurs, 427 U.S. 97, 106 (1976) that where there is a substantial basis for claiming that material is within the purview of Brady the Government must either furnish the information to the defense or submit it to the court for review. See also United States v. Gaston, 608 F.2d 607 (5th Cir. 1979)(error to fail to conduct in camera review of Brady material where there has been a request for specific documents sought as potentially exculpatory).

Although Brady does not create a discovery rule because its requirements are found in the Constitution, it impacts significantly on discovery. Thus, some documents not covered by Federal Rule of Criminal Procedure 16, e.g. Jencks Act statements, may be Brady material because of their content. United States v. Kaplan, 554 F.2d 577 580 (3rd Cir. 1977). To the extent that specifically requested information is either material to guilt or punishment and favorable to the accused under Brady, it must be material to the preparation of the defense within the meaning of Rule 16(a)(1)(C) and (D). United States v. Thevis, 84 F.R.D. 47, 52 (N.D. Ga. 1979). Some requests made in the instant motion fall within Rule 16 and do not implicate 18 U.S.C. Section 3500, the Jencks Act, as they relate to statements or testimony of individuals not designated as Government witnesses. Moreover, to the extent that the requests seek summaries of remarks made by designated witnesses, e.g. Government 302's the Jencks Act does not come into play, as such materials do not fall within the definition of "statements" within the meaning of that act. United States v. Starusko, 729 F.2d 256, 263 (3rd Cir. 1984); see also United States v. Gaston, 608 F.2d 607 611 (5th Cir. 1979). There can be no question, then, that these materials should be disclosed to defense counsel immediately, and such material that the Government is unsure about should be presented forthwith to the court for in camera inspection.

Defendant also seeks by this motion production of evidence favorable to the accused even if it is contained in statements or testimony of Government designated witnesses and is therefore within the ambit of the Jencks Act. Although the Fifth Circuit left the question of pre-trial production of such materials open in United States v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979), many other courts, including district courts within the Fifth Circuit, have found in situations like that presented by this case that early disclosure of such material is necessary to protect the constitutional rights of defendants. See e.g., United States v. Starusko, 729 F.2d 256, 261-263 (3rd Cir. 1984)(district court has authority to order Brady material disclosed prior to trial; compliance with Jencks Act does not necessarily satisfy due process concerns of Brady; United States v. Kosovsky, 513 F. Supp. 14 (W.D. Okl. 1980) (Brady and Giglio material as a matter of course ordered disclosed as far as prior to the trial as possible in order to enable Defendant to make use of it and to avoid unnecessary delays during the trial); United States v. Thevis, 84 F.R.D. 47, 52-54 (N.D. Ga. 1979)(noting Campagnuolo, and holding that Government's disclosure must be made at such time as to allow the defense to use favorable material effectively in the preparation and presentation of its case; independent investigation is the only effective method of utilizing this information and independent investigation requires time); United States v. Deutsch, 373 F. Supp. 289, 290 (S.D. N.Y. 1974)(exculpatory information may come too late if it is only given at trial, and the effective implementation of Brady v. Maryland must therefore require earlier production in at least some situations).

Without early disclosure to the defense of the Brady material requested by the instant motion, lengthy delay of the trial may be unavoidable, and it will be impossible for the counsel for the Defendant to coordinate his examinations of the various witnesses in an efficient and effective

manner. Here, then, as in the cases just cited, it is clear that early disclosure of this Brady material is necessary to protect the constitutional rights of the Defendant and to avoid lengthy and unnecessary delays during the trial.

Additionally, the defendant would show the Court in support of his motion to require the prosecutor to disclose promises of favorable treatment or threats of prosecution made to witnesses for the prosecution the following

A Defendant in a criminal trial may not bribe or threaten a witness in order to obtain testimony favorable to his case. See e.g., 18 U.S.C. Section 1512 (1976). On the other hand, if a potential witness is himself legally vulnerable, the prosecutor in a criminal case is allowed to influence the content of his testimony through assurances of favorable treatment, such as a grant of immunity or a promise of leniency, premised on the witness's "cooperation". Although these promises are permitted, they create an incentive for the witness to stretch the truth or even lie so as to appear cooperative and please the prosecutor. Washington v. Texas, 388 U.S. 14, 22-23 (1967). If promises of favorable treatment are not disclosed, the trier of fact is deprived of evidence crucial to a fair assessment of the witness's testimony. The Defendant's right to a fair trial, guaranteed by the due process clauses of the Fifth and Fourteenth Amendments, is thereby violated.

A prosecutor may coax cooperative testimony from potential Government witnesses in many ways. He might promise immunity from prosecution, drop or reduce charges, provide monetary payments, agree to bring the witness's cooperation to the attention of the sentencing judge or make a more specific commitment to recommend probation or a reduced sentence. Sometimes prosecutors threaten prospective witnesses by stating that if they do not testify, they will be prosecuted in some particular fashion. These types of promises and threats create a clear incentive

19
SC

for falsification. In other words, a witness so promised or threatened has a compelling motive to give testimony harmful to the Defendant. If the truth will not suffice for purposes of the government, the witness will be inclined to fabricate. Vague or tentative promises may intensify this incentive for falsification. Indeed, a prosecutor often makes a promise of favorable treatment or a threat of prosecution, either vague or explicit, precisely because of its anticipated impact on the witness's testimony. This is not to say that the prosecutor intends to suborn perjury. Yet perjury may result. Consequently, courts agree that a prosecutor's failure to disclose promises of favorable treatment made to witnesses may violate the due process clauses of the Fifth and Fourteenth Amendments by denying the Defendant a fair trial. Naupe v. Illinois, 360 U.S. 264 (1959). It is essential for the jury to know of these promises in order to evaluate the witness's testimony. A prosecutor who withholds such crucial impeachment evidence deprives the Defendant of a full opportunity to attack the credibility of a witness against him, and the witness's testimony will be accorded more weight than it merits. Id. The case against the Defendant is thereby unfairly skewed to his detriment.

The Supreme Court of the United States has not designed any rules that respond specifically to the problems caused by deals made between prosecutors and their witnesses. Rather, it has considered such deals only within the general category of exculpatory or impeaching evidence. In United States v. Agurs, 427 U.S. 97 (1976), the Supreme Court established a framework for reviewing all cases involving nondisclosure of exculpatory or impeachment evidence by the prosecutor. More specifically, when defense counsel makes a pretrial request for specific, nonprivileged evidence in the prosecutor's possession which is either exculpatory or impeaching, the prosecutor must produce the evidence. Otherwise, a subsequent conviction will be set aside if

"the suppressed evidence might have affected the outcome of the trial." Id. at 104. Nondisclosure in this situation is "seldom, if ever excusable." Id. at 106. Thus, if a prosecutor makes a deal with a witness, he must, on pain of reversal of any guilty verdict, disclose the existence and nature of the deal, provided it is material. Writing for the majority in Agurs, Justice Stevens explained that, logically, the same standard that applies to the post-trial decision of a judge or reviewing court as to whether nondisclosure deprived the Defendant of his right to due process must apply to the prosecutor's decision in advance of trial as to what he should voluntarily submit to defense counsel.

> Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.

Id. at 108. The Agurs court went on further to say that the standard of materiality employed by reviewing courts is a function of the actions of defense counsel. In other words, if defense counsel specifically requests the prosecutor to inform him of any deals made with witnesses, the prosecutor is obliged to do so provided the information "might" affect the outcome of the trial. United States ex rel. Marzeno v. Gengler, 574 F.2d 730 (3rd Cir. 1978).

Since the Defendant in this cause has made a specific request for information relating to promises of favorable treatment, there can be no argument by the Government that it was not on notice of a request by the Defendant for such information. In other words, the prosecutor does not need to know the Defendant's theory of the case to recognize the impeachment value of information concerning deals he has made with his witnesses. He knows that the witness's testimony is important to the Government's case otherwise he would not have promised favorable treatment. He also knows that the deal will detract from the impact of the testimony in the jury's eyes.

A leading case in this area of the law is Giglio v. United States, 405 U.S. 150 (1972). In Giglio, a witness for the Government claimed on cross-examination that he had not secured any agreement with the Government in exchange for his willingness to testify against the Defendant. The prosecutor made no effort to contradict or clarify the witness's testimony. Evidence discovered by the Defendant after the trial indicated that a prior to trial the prosecutor had promised the witness either complete immunity or leniency in exchange for the witness's willingness to testify. Concluding that the prosecutor's failure to correct the witness's false statement was incompatible with the rudimentary demands for justice, the Supreme Court reversed. The court reasoned that the prosecutor has a duty to disclose evidence affecting a witness's credibility and that the prosecutor's failure to disclose such evidence warrants a new trial if "the false testimony could...in any reasonable likelihood have affected the judgment of the jury." Id. at 154 (quoting Napue v. Illinois, supra). In essence, the most important aspect of the prosecutor's duty under Giglio is to present to the jury as complete a picture as possible of any promises or agreements between the witness and the Government. United States v. Nicholson, 525 F.2d 1233, 1236 (5th Cir.), cert. denied, 425 U.S. 972 (1976). "Giglio requires the prosecutor to insure that the disclosure of the plea agreement to the jury is accurate and complete." United States v. Leslie, 759 F.2d 366, 376 (5th Cir. 1985).

In summary, it is abundantly clear that an undisclosed promise of favorable treatment involves a corruption of the truth-seeking process. Unless the jury learns that the prosecutor has given the witness a motive to lie, it can only assume that his testimony should be taken at face value. This deception by omission is compounded when the witness's testimony appears to be against his interest and therefore particularly probative. But, if the witness has been promised immunity in exchange for his testimony, or has been offered any other plea agreement or has been

promised something, his true self-interest belies the appearance. A system that permits the Government to jeopardize the Defendant's rights by giving witnesses an incentive to lie must also require the party which offers the incentive to reveal it to the Defendant so that he may see it is brought before the trier of fact.

For all the foregoing reasons, Defendant respectfully asks this Court to grant paragraph XII of the foregoing motion.

Respectfully submitted,

_____
Scot Courtney
P.O. Box 787
San Marcos, Texas 78667-0787
512-392-9292
512-532-6766 FAX
Texas Bar No. 00790515
Federal Admissions No. 18347

Greg Cagle
215 E. Galveston Rd.
League City, Texas 77573-3706
281-332-7630
281-332-7877 FAX
Texas Bar No. 00790414
Federal Admissions No. 19460