United States District Court
Southern District of Texas
FILED

MAY 20 2010

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA
Respondent - Plaintiff

V.

CR H-06-237-02-S

(CA H-10-667)

EUGENE H. WILLIAMS JR.
Petitioner – Defendant

PETITIONER'S REBUTTAL TO GOVERNMENTS
RESPONSE TO WILLIAM'S MOTION TO VACATE
SENTENCE UNDER 28 USC ss 2255.

'Commercial Explosives are not covered by the national Firearms Act and Act does not reach such materials through intent alone, since Act was aimed at kind of "Evil" Articles specified in definition of Destructive device rather than as "Evil Perversion" of use of Articles of innocent commerce without alteration of their nature or mode of operation' . . . the term 'Firearm' of Chapter 53 of the Internal Revenue Code, thus remaining those identifiable generally and broadly, it NOT Exclusively with criminal activity' (US v Schofer, 1969, DCNY, 310 F Supp 1292).

'The Court noted that the NFA Provisions of the Internal revenue Code were so limited as to guarantee that "only weapons used principally by persons engaged in unlawful activities" were taxed (Hays v US; 88 S.ct 722; 2 Chronicles 19: 5-7).

Noise Flash Diversionary Devices (NFDD) are classified as High Explosives; they are commercial explosives legally manufactured for Law enforcement and Military Use only; are tax exempt. They are deployed in training and tactical operations in furtherance of the mission of Law enforcement of military units. The court has clearly defined that the intent of the NFA is focused on devices utilized for the furtherance of criminal activity, not legally manufactured devices that serve a legitimate use within the tactical community.

1

This Court should in all cases presented before it take into account the congressional intent of the statue before it. As in this instance, the letter and clear intent of the statue are at direct odds.

In fact, the government provided direct evidence that the devices in this case were properly registered to law enforcement agencies. The governments own witness, Charles Malouff, stated he was a member of said agencies and was present at the State and nationally Accredited Law Enforcement training programs when these devices he supplied were utilized. Per ATF regulations, NFDD as outlined in the indictment CANNOT be registered or TRANSFERRED to an individual. In essences, there is NO LEGAL Avenue available for an individual to register or transfer such devices. Therefore, in compliance with the manufacturer and statue, the devices were registered by the manufacturer to law enforcement agencies. The statue itself, nor any regulation stipulate such legally registered devices cannot be used for training purposes in conjunction with other law enforcement agencies. In lieu of these facts alone, the indictment pertaining to counts 1, 2, 3 and 4 of the indictment should have been summarily dismissed. Counsel for the defense failed in this endeavor nor pursued that the defendant was not in violation of this statue.

The use of such devices could not have escaped the endorsement and approval of petitioner Police Chief, R.G. Smith. Smith testified he gave no authority for defendant to engage in the charged conduct. This testimony is in direct conflict to the police departments sponsorship of the tactical training programs conducted by one of its members. On more than 2 occasions, Smith was present when NFDD's provided by Malouff were deployed in accredited Tactical law Enforcement training courses. A minimum of a least 6 members of the department were trained in the use and deployment of NFDD's provided by Precision Ordinance at the behest of Smith. These facts were not even addressed by defense council after petitioner made it clear that the testimony provided by Smith was not consistent with verifiable facts, to wit: department training records.

II.

In reference to storage and devices lacking serial numbers, the government presented the testimony of Louis Hollingsworth, an agent employed by the National Firearms Branch or ATF. He testified that flash bangs were high explosives and as such had specific requirements for storage and strict regulations on transfer. He explained that before they could be transferred, the Manufacturer had to apply to ATF for permission to transfer devices to a particular receiver. Prior to shipment, the transfer had to be approved by ATF. In all cases, the devices had to be registered to the transferee, even if the transferee was a law enforcement agency. Hollingsworth also stated that a law enforcement agency was exempt from taxation pertaining to the registration or transfer of such devices. In addition, there are specific storage requirements for NFDD's. Hollingsworth stated that there is an exemption allowing for NFDD's to be stored in the cardboard containers in which they were shipped.

The government clearly displayed the boxes that stored a large number of NFDD's, some even did not bear serial numbers, that the government recovered, Sealed, from Petitioner's office. In open court, the government read the address of the department the devices were addressed and shipped to, Attn: Charles Malouff. The government also read aloud to the jury the return address on the shipping container as being Precision Ordinance, the manufacturer of the devices. The governments own witness, Malouff, these were the same devices and shipping containers that were left with Petitioner when Malouff was deployed by the U.S. Coast Guard. The contents of the sealed boxes were not revealed to Petitioner nor the seal breached to assess the contents. According to the governments own witness, the devices were properly stored in the shipping container as required by law. No evidence was presented to establish that petitioner had breeched the seal on the boxes or in any way was given detailed knowledge of the contents other than NFDD's used by Malouff in connection to his position as a sales representative with Precision Ordinance. Petitioner therefore had no knowledge that any of the items within the boxes did not contain any serial numbers. In lieu of these facts alone, they support the dismissal of counts 5 and 6 of the indictment, Defense counsel failed to focus on these facts or present them before the jury.

III.

In summary, a review of the facts outlined herein, as well as those specified in Attachment A, cannot be disputed, for they are part of the record. It should be noted by the court that in the government's response, they do not address the disputed facts presented by petitioner. The government simply claims defendant identified "facts" outside the record to also support his grounds for relief for ineffective assistance of trial. Petitioner clearly states in no uncertain terms that the facts as outlined within were not presented, rebutted, expounded upon, explained, or verified to this court nor the jury. This information was all presented and defense counsel had full knowledge of all prior to trial. These facts cannot be disputed because defense counsel FAILED to present them before the court. The court can clearly see there is nothing vague or speculative about the facts herein. Ironically, the court should take note that no judicial history exists were a law enforcement officer was ever even charged with a violation of the National Firearms Act in regards to the possession or transfer of noise flash diversionary devices that were legally registered to a law enforcement agency, being that officer was an employee of that specific department or not has evidently not been an issue that congress felt needed to be addressed.

Therefore, it is clear that defense counsel representation fell well below an objectionable standard or reasonableness and there is a reasonable probability that the results of these proceedings would surely have been dramatically different (US v Bounds, 943 Fed2 541, 544; 5thCir).
Based upon these facts presented herein to this honorable court by petitioner, Federal Habeas Corpus relief pursuant to SS 2255 motion filed by petitioner pursuant to his conviction in the Houston Division of the Southern District of Texas, BE GRANTED.

Therefore, Petitioner asks that the Court grant the following relief; vacatur of the Judgement of Conviction or any other relief to which Petitioner may be entitled.

I declare under penalty of perjury that the foregoing is true and correct and this rebuttal under 28 USC ss 2255 was placed in the prison mailing system on __MAY 18__, 2010.

Executed (signed) on this the __18__ day of __MAY__, 2010

_____
Eugene H. Williams Jr. 66170-179
Petitioner
Federal Correctional Institute
Safford, AZ

Attachment A

The following facts were not included in the trial or in the appeal and show that defendant had ineffective assistance of trial and appellate counsel.

1. Congressional intent of the statute is to address the criminal possession of the IED's (Improvised Explosive Devices), not the lawful possession of NFDD's (Noise Flash Diversionary Devices) legally manufactured for law enforcement and military use. Additionally, the law specifically exempts said entities from registration and transfer fees.
2. NFDD's cannot be registered nor transferred to an individual. Therefore, the devices could not have been registered to the defendant. In addition, registration records of NFDD's are privileged information under Title 26 USC and cannot be queried by an individual.
3. According to the government, the NFDD's in question were transferred and registered to the respective law enforcement agencies where Malouff, the Precision Ordinance representative, worked.
    a. These devices were registered with an accredited law enforcement agency or with the manufacturer, Precision Ordinance.
    b. During state and nationally accredited Tactical Operational Medical Support Training (TOMS) conducted by the defendant in the course of his employment, defendant has the full support and approval of defendant's police agency. During said courses, Malouff was present as a representative of Precision Ordinance who provided NFDD's for such training in the normal course of his business.
    c. Defendant kept up to date records in regards to device type, serial number, and Malouff's inventory records. A subpoena was twice served on Cypress Creek EMS in an attempt to secure all records defendant kept in regards to said devices. They never produced those records.
    d. Students, law enforcement instructors, and military personnel, including members of defendant's police department all possessed NFDD's provided by Precision Ordinance and deployed same in state and nationally accredited TOMS training programs over a two year period. According to the government's view, each student and instructor should be held criminally liable for possessing these devices and the instructors additionally for transferring them to the student. This, of course, is absolutely ludicrous and in direct conflict to the intent of the statute.
4. All devices were registered, which is how the government was able to determine who and where the devices were. Defendant cannot speak on behalf of Malouff, but defendant did maintain a complete log of devices Malouff provided for training purposes in compliance with defendant's departmental standard operating procedures.
5. Defendant's immediate supervisor, Chief of Police, Glenn Smith of the Hempstead Police Department was fully aware, participated in, and approved the use of NFDD's supplied by Precision Ordinance for state and nationally accredited programs supervised by defendant in the course of his employment. At no time did the Chief of Police or defendant ever think that they were acting in any other way than in full compliance with the law.

6. Defendant never concealed the fact that Precision Ordinance provided NFDD's for use during accredited TOMS courses. In fact, Malouff specifically addressed each respective class that the ballistic shields and NFDD's used during the course were provided at no cost for use during training evolutions. Flyers and other sales material were distributed by Malouff to students.
7. The government alleged that Cypress Creek EMS paid Malouff for some of these devices, $310.00 specifically. The government produced an unknown type of purchase order, computer generated, in the amount of $310.00. This document was not authenticated nor its origin revealed.

    The Executive Director of Cypress Creek EMS, Bradley England, indicated his records reflected no such payment to Malouff. The government then claimed defendant paid Malouff in conflict to the alleged evidence they produced to the contrary. Bradley England and reserve police officers with the Hempstead Police Department fully supported Precision Ordinance providing NFDD's to these TOMS courses, that his (Bradley England's) agency conducted. Accordingly, Precision Ordinance was considered a corporate sponsor of the TOMS training program.
8. During field training exercises when NFDD's were to be deployed, defendant provided verbal and/or written notice of such use to the Harris County Sheriff's Department, Harris County Precinct 4 Constable Office and the Federal Bureau of Investigation over a two year period. At no time was the issue of registration ever brought to the attention of the defendant or his department.
9. A specific number of NFDD's provided for training by Precision Ordinance were found stored in approved metal shipping containers clearly marked "For Training Use Only". Additional devices being stored as a courtesy to Malouff were sealed in original cardboard shipping containers in defendant's office. According to the government's own witness, NFDD's may be stored in the original containers they were shipped in. The government even noted that the two boxes mentioned above had Malouff's name and police department on the recipient's section of the label. Precision Ordinance was also listed as the shipper on the box.
10. It was shown that in the two aforementioned sealed boxes, a number of devices were found without serial numbers. Defendant did not access these sealed boxes and was storing them as a courtesy to Malouff in lieu of securing them in his vehicle. All the devices provided for the use in the TOMS courses were clearly marked, documented, and deployed per department policy.
11. The government focused most of their biased argument on defendant's misuse of a NFDD that injured his friend and co-worker. They also focused on obstruction of justice.
    a. Defendant openly admitted and took full responsibility for his serious lack in judgment resulting in the misuse and injury of defendant's friend. The misuse of the device was in violation of police department policy and the defendant promptly resigned from the police department and ended his 20 year career in law enforcement. The misuse of the device had no bearing on the registration status of the device. No legal grounds are present that allow ATF to interfere in the operations of local law enforcement agencies in regards to policy and disciplinary matters.
    b. On the same night as the accident, after the patient was transported to a trauma center, defendant contacted his immediate supervisor, Chief Glenn Smith and

provided him with all the details of the accident. Furthermore, on the same night, defendant personally met with Chief Smith at the Hempstead Police Department. How can justice be obstructed when the defendant followed departmental policy and reported the accident to his immediate supervisor? Chief Smith evidently believed that no crime had occurred either. No doubt ever existed during the trial that the injury resulting was nothing more than a tragic accident.

In closing, it is abundantly clear based upon all facts mentioned herein and during the trial that defendant had ineffective assistance of appellate counsel as well as ineffective counsel during the trial. Counsel for the defendant failed to address, expound, mention, question, verify, explain, object, or substantiate facts presented into evidence and clearly exhibited no basic knowledge of the issues of fact as the pertained to this case.



United States District Court
Southern District of Texas
FILED

MAY 2 0 2010

David J. Bradley, Clerk of Court

GENE WILLIAMS #66170-179
FEDERAL CORRECTIONAL INSTITUTION
PO BOX 9000
SAFFORD, AZ 85548-9000

7009 1680 0000 3702 4786

✉66170-179✉
Clerk Us District Court
515 Rusk Avenue
Houston, TX - 77002
United States